DENNIS THOMAS, Plaintiff-Appellee, v. JOHNSON CONTROLS, INC., Defendant-Appellant.

First District (6th Division)    No. 1—01—4056

Opinion filed November 21, 2003.—Rehearing denied December 18, 2003.

1028

Sachnoff & Weaver, Ltd., of Chicago (Michael D. Richman, Robert A. Roth, and Edmund S. McAlister, of counsel), for appellant.

Law Offices of William S. Wojcik, Ltd., of Oak Lawn (William S. Wojcik, of counsel), and Novoselsky Law Offices, of Chicago (Kevin S. Besetzny and Robert Shulman, of counsel), for appellee.

PRESIDING JUSTICE O'MARA FROSSARD delivered the opinion of the court:

Plaintiff Dennis Thomas sued defendant Johnson Controls, Inc., alleging that he suffered injuries when he slipped and fell on oil that had accumulated on the floor of defendant's premises. Following a trial, the jury returned a general verdict in favor of plaintiff and against defendant for $343,810.09. On appeal, defendant contends that the following circumstances amounted to cumulative error, thereby denying it a fair trial: (1) the trial court erred in refusing to submit to the jury any of the eight special interrogatories it proposed; (2) the trial court erred in failing to follow a discovery sanction entered by a coordinate judge; (3) the trial court erred in barring defendant from introducing medical evidence that refuted the causal nexus claimed by plaintiff; (4) the trial court erred in prohibiting defendant from introducing evidence concerning its safety programs and

independent inspections of its facilities; and (5) during closing arguments, plaintiff's counsel made unfounded accusations against defendant and improperly referred to defendant's alleged wealth and size. Due to the prejudice caused by the trial judge's failure to follow an earlier order barring certain testimony, we reverse and remand for a new trial.

## BACKGROUND

On September 29, 1995, plaintiff, a truck driver, delivered a load of lead to a battery plant owned by defendant. According to plaintiff, while he was walking along the loading dock, he slipped on a puddle of oil and fell on his knees, landing facedown on the concrete floor. Plaintiff filed a complaint against defendant in 1997. In the course of discovery, defendant requested that plaintiff produce, among other things, "all x-rays of any part of the body of plaintiff in the possession of either plaintiff or his attorneys, insofar as the same pertain to the subject matter of this litigation." In his complaint, plaintiff asserted that under the Premises Liability Act (740 ILCS 130/1 *et seq.* (West 1998)), defendant was liable to him for the injuries he suffered when he fell on the loading dock. Defendant answered the complaint, denying liability and alleging contributory negligence. The case was set for a jury trial to begin August 13, 2001.

On April 18, 2001, plaintiff filed his answers to defendant's Supreme Court Rules 213(f) and (g) interrogatories. 177 Ill. 2d Rs. 213(f), (g). Therein, plaintiff disclosed witness Dr. Paul J. Gruszka, an orthopedic surgeon who performed a total right knee arthroplasty on plaintiff on October 9, 2000, and indicated that Dr. Gruszka's testimony would be based upon, among other things, his "review of records and files." Plaintiff scheduled Dr. Gruszka's deposition for August 8, 2001.

On July 30, 2001, plaintiff sent nine X rays to a messenger service with instructions to copy them and forward the copies to defendant's counsel. Defense counsel received these X rays for the first time on August 1, 2001. On August 2, 2001, defendant filed a supplemental answer to plaintiff's Supreme Court Rules 213(f) and (g) interrogatories (177 Ill. 2d Rs. 213(f), (g)), disclosing Dr. William Dobozi, an orthopedic surgeon, as a witness. Defendant stated that Dr. Dobozi "may be called to testify as to the issues of damages and causation based upon the x-rays produced by the plaintiff on August 1, 2001, and other medical records supplied by plaintiff." Defendant indicated that Dr. Dobozi would testify that plaintiff "suffered from a degenerative condition in his knees prior to the accident complained of in this lawsuit, and that knee replacement was likely to be inevitable for this

plaintiff irrespective of his accident on September 29, 1995." Defendant noticed Dr. Dobozi's deposition for August 9, 2001.

On August 3, 2001, plaintiff filed an emergency motion to quash the notice of Dr. Dobozi's deposition and bar his testimony, asserting that the late disclosure of this witness was extremely prejudicial and violated Rule 213. On August 6, 2001, defendant filed an emergency motion to bar and quash notice of Dr. Gruszka's deposition, in which defendant asserted, "Plaintiff's disclosure of medical information upon which his medical witness intends to rely comes for the first time less than two weeks before trial and is extremely prejudicial to the defendant. Moreover, plaintiff seeks to depose Dr. Gruszka a mere five days before trial, again relying on x-rays that defendant received for the first time on August 1, 2001." On August 7, 2001, the motion judge entered an order granting plaintiff's motion to bar Dr. Dobozi. The motion judge also granted defendant's motion in part, allowing Dr. Gruszka as a witness but specifying that "x-rays of plaintiff's knee, produced on August 1, 2001, are barred at trial and may not be the subject of or form the basis of any opinion proffered by Dr. Gruszka at deposition or trial."

Dr. Gruszka's evidence deposition was taken as scheduled on August 8, 2001. After relating the details of his examination of plaintiff's knees, Dr. Gruszka testified as follows:

"Q. [Plaintiff's counsel:] And based on that examination, did you arrive at a diagnosis at that time?

A. Along with the x-rays, yes. Based on the examination only, no.

Q. Okay. And what was your diagnosis?

A. The diagnosis was osteoarthritis of the right knee and left knee."

The case proceeded to trial. Prior to opening statements, defendant's counsel alerted the trial judge both to the motion judge's order barring reference to the X rays of plaintiff's knee and to Dr. Gruszka's deposition testimony, where he stated that he relied upon those X rays in making his diagnosis. After the attorneys argued at length as to the meaning and context of the order, the trial judge commented, "I never saw anything like this." He then stated, "All right. So is there any way to even figure out a compromise? I don't think so. Maybe you better start thinking is there any way to compromise." When the attorneys indicated willingness to talk, the court went off the record. Later, just before the videotape of Dr. Gruszka's testimony was to be shown to the jury, at a point when the court reporter was not present, defendant presented a motion *in limine* to bar Dr. Gruszka's testimony. The trial judge denied the motion.

## ANALYSIS

### I. Prior Order Entered by Coordinate Judge

We begin our analysis with defendant's contention that the trial judge erred in permitting Dr. Gruszka to testify based on X rays of plaintiff's knees. Defendant argues that no compelling circumstances justified the departure of the trial judge from the motion judge's earlier order that the X rays would be barred at trial and could not form the basis of Dr. Gruszka's opinions. Defendant also asserts that the late production of the X rays, just 12 days before trial, unduly prejudiced its ability to refute Dr. Gruszka's testimony through the testimony of a rebuttal expert.

■ In a variety of contexts, interlocutory orders may be reviewed, modified, or vacated by successor judges at any time before final judgment. *Balciunas v. Duff*, 94 Ill. 2d 176, 185 (1983). However, if the order involves an exercise of discretion, "that ruling should not be reversed by another member of the court simply because there is disagreement on the manner in which that discretion was exercised." *Balciunas*, 94 Ill. 2d at 188. A successor judge should not reverse or modify a prior judge's discretionary discovery ruling unless there is a change of circumstances or there are additional facts that warrant such action. *Balciunas*, 94 Ill. 2d at 188; *Marcy v. Markiewicz*, 233 Ill. App. 3d 801, 808 (1992); *In re Marriage of Falstad*, 152 Ill. App. 3d 648, 655 (1987). Successor judges must give careful consideration to modifying or vacating any prior interlocutory rulings and also should exercise "considerable restraint" in modifying or reversing previous discovery rulings. *Balciunas*, 94 Ill. 2d at 187-88.

Here, plaintiff did not present the trial judge with any change of circumstances or additional facts that would have allowed the modification, vacation, or reversal of the motion judge's discovery order. In this case, the trial judge effectively vacated the prior discovery order by ignoring it. The motion judge's discovery order clearly stated that "x-rays of plaintiff's knee, produced on August 1, 2001, are barred at trial and may not be the subject of or form the basis of any opinion proffered by Dr. Gruszka at deposition or trial." When defendant brought this order to the attention of the trial judge, he disregarded its plain language and instead directed the attorneys to work out a compromise concerning Dr. Gruszka's testimony. No compromise was reached, the trial proceeded, and Dr. Gruszka was allowed to offer his opinion based on X rays of plaintiff's knee.

■ The trial judge's decision to ignore the portion of the motion judge's order that barred Dr. Gruszka from testifying based on the X rays, while at the same time to enforce the portion of the motion

judge's order that barred defendant from presenting a rebuttal expert on the issue of the cause of plaintiff's injuries, unfairly prejudiced defendant. Such action, absent a change in circumstances or the presentation of additional facts, was improper. *Balciunas*, 94 Ill. 2d at 188. Essentially the trial judge's order permitted plaintiff to use the X rays that were produced on the eve of trial and at the same time barred defendant from presenting a rebuttal expert regarding that evidence. The purpose of discovery rules requiring timely disclosure of expert witnesses, their opinions, and the bases for those opinions is to avoid surprise and to discourage strategic gamesmanship. *Copeland v. Stebco Products Corp.*, 316 Ill. App. 3d 932, 937 (2000). "A defendant has the right not only to rebut evidence tending to show that defendant's acts are negligent and the proximate cause of claimed injuries, but also has the right to endeavor to establish by competent evidence that the conduct of a third person, or some other causative factor, is the sole proximate cause of plaintiff's injuries." *Leonardi v. Loyola University of Chicago*, 168 Ill. 2d 83, 101 (1995).

■ The decision whether to admit expert testimony is within the sound discretion of the trial court. *Snelson v. Kamm*, 204 Ill. 2d 1, 24 (2003). After reviewing the record, we conclude that the motion judge did not abuse his discretion in entering an order simultaneously barring Dr. Gruszka from testifying based on the X rays and barring Dr. Dobozi from testifying in rebuttal. The trial judge improperly modified the motion judge's discovery order and, in doing so, caused defendant unfair prejudice. Accordingly, we reverse and remand for a new trial.

Having determined that a new trial is necessary, we need not consider defendant's other arguments on appeal. Nevertheless, because the issues may arise on retrial, we turn our attention to defendant's remaining contentions.

## II. Special Interrogatories

■ First, defendant contends that the trial court erred in refusing to submit to the jury any of the eight special interrogatories it proposed. Special interrogatories are governed by section 2—1108 of the Code of Civil Procedure, which provides as follows:

"§ 2—1108. Verdict—Special interrogatories. Unless the nature of the case requires otherwise, the jury shall render a general verdict. The jury may be required by the court, and must be required on request of any party, to find specially upon any material question or questions of fact submitted to the jury in writing. Special interrogatories shall be tendered, objected to, ruled upon and submitted to the jury as in the case of instructions. Submitting or refusing to submit a question of fact to the jury may be reviewed on appeal, as a ruling on a question of law. When the special find-

ing of fact is inconsistent with the general verdict, the former controls the latter and the court may enter judgment accordingly." 735 ILCS 5/2—1108 (West 2002).

Under the plain language of section 2—1108, a trial court has no discretion to reject a special interrogatory that is proper in form. *McGovern v. Kaneshiro*, 337 Ill. App. 3d 24, 30 (2003). Refusal to submit a proper special interrogatory to the jury is reversible error where the error is not harmless. *McGovern*, 337 Ill. App. 3d at 30, citing *Snyder v. Curran Township*, 281 Ill. App. 3d 56, 63-64 (1996).

■ A special interrogatory is in proper form when "(1) it relates to an ultimate issue of fact upon which the rights of the parties depend, and (2) an answer responsive thereto is inconsistent with some general verdict that might be returned." *Simmons v. Garces*, 198 Ill. 2d 541, 563 (2002). The special interrogatory should be a single question, stated in terms that are simple, unambiguous, and understandable, and should not be repetitive, confusing, or misleading. *Simmons*, 198 Ill. 2d at 563. In addition, it should use the same language that the instructions contain. *Curatola v. Village of Niles*, 324 Ill. App. 3d 954, 960 (2001); *Niewold v. Fry*, 306 Ill. App. 3d 735, 746 (1999). On retrial, defendant should be sure that any proposed special interrogatories are in proper form, stating a single question in simple terms. 735 ILCS 5/2—1108 (West 2002).

### III. Testimony Regarding Preexisting Degenerative Condition

Next, defendant contends that the trial court erred in redacting a key portion of the deposition testimony of Dr. Wasylenko, one of plaintiff's treating physicians, concerning the causal relationship between a prior degenerative condition in plaintiff's knees and his need for surgical treatment. The redacted questions and answers at issue were as follows:

"Q. [Defendant's counsel:] So the poor prognosis for Mr. Thomas' right knee is directly related to the degenerative changes, degenerative narrowing of the bone spacing relating to the articular cartilage that covers the head of the tibia in the right knee?

A. Yes, yes.

Q. And the thinning of that articular cartilage, again, is not trauma induced?

A. It's not trauma induced."

Defendant argues that redaction of this testimony was prejudicial in that it prevented the jury from hearing crucial opinion evidence as to the cause of plaintiff's injuries. Defendant also asserts that plaintiff waived any objection to this testimony by failing to object to it at the time of the deposition. Plaintiff responds that there is no dispute as to Dr. Wasylenko's opinion that the degenerative changes to plaintiff's

right knee were not trauma induced and that, in fact, Dr. Wasylenko voiced this opinion in nonredacted portions of his deposition. Plaintiff asserts that, therefore, defendant was not prejudiced by the redaction of this testimony.

On appeal, plaintiff offers no argument or authority to support the redaction of these portions of Dr. Wasylenko's testimony. At trial, plaintiff argued that the trial court was required to redact Dr. Wasylenko's statements regarding plaintiff's prognosis under the holding of *Henricks v. Nyberg, Inc.*, 41 Ill. App. 3d 25 (1976), and the trial court seems to have relied upon that case when redacting the testimony at issue. In *Henricks*, the court considered whether a physician's testimony regarding the plaintiff's prognosis was admissible when the last time the physician had examined the plaintiff was three years before trial. *Henricks*, 41 Ill. App. 3d at 28. The court held that because expert opinion testimony must be founded upon facts and not conjecture, an opinion at trial based upon an examination conducted three years prior would be unreliable and improper. *Henricks*, 41 Ill. App. 3d at 28. The court found that "plainly," the physician's testimony concerning the prognosis he made three years prior could not represent an opinion that he held at the time of trial. *Henricks*, 41 Ill. App. 3d at 28.

■ If asked by plaintiff to consider this issue on retrial, the trial court should, together with the *Henricks* case, also be mindful of *Decker v. Libell*, 193 Ill. 2d 250 (2000), regarding what circumstances are relevant in determining the admissibility of opinion testimony about the prognosis for a patient's injuries or condition:

> "As a number of the cases illustrate, the calendar alone does not determine whether the evidence should be admitted or excluded. Courts will consider the nature of the plaintiff's injury or condition, the type of treatment administered to the plaintiff, the length of time the plaintiff was receiving the treatment, the number and frequency of the plaintiff's visits, the length of time between the plaintiff's last treatment and the witness' formation of his or her opinion, the length of time between the formation of the opinion and the trial, and any other circumstances that bear on the relevance and reliability of the proposed testimony. See *Soto* [*v. Gaytan*], 313 Ill. App. 3d [137,] 147-48 [(2000)] (listing relevant circumstances; specifically discussing nature of injury, length and nature of treatment, and interval between treatment and time of trial); *Housh* [*v. Bowers*], 271 Ill. App. 3d [1004,] 1008 [(1995)] (length and nature of treatment); *Marchese* [*v. Vincelette*], 261 Ill. App. 3d [520,] 526 [(1994)] (interval between examination and deposition; length of treatment)." *Decker*, 193 Ill. 2d at 254-55.

IV. Evidence of Safety Programs and Independent Inspections

Defendant contends that the trial court erred in prohibiting it from introducing evidence concerning its safety programs and independent inspections of its facilities. Defendant asserts that plaintiff initiated the introduction of evidence concerning the battery plant's condition and compliance with safety procedures, and thus opened the door to rebuttal evidence regarding its safety programs. In particular, defendant challenges the trial court's prohibition of Donna Brucher's rebuttal testimony regarding defendant's "various safety measures, controls, practices and procedures" at the battery plant.

The record reveals that Brucher was a human resources manager for defendant. She described her department as responsible for safety health services, employment, labor relations, and overall employee relations. With respect to safety issues, she explained her department's responsibilities as follows:

"Safety is under the function of human resources with a safety coordinator reporting to me. We ensure that the plant employees in our facilities meet requirements, either OSHA [(Occupational Safety and Health Administration)] requirements, company requirements, industry standards, and we support the operations personnel, that would be the plant manager, superintendent, supervisors, [and] employees in accomplishing all of those objectives. *** Safety encompasses routine safety, machine safety, just anything that a normal employee would encounter working for [defendant] at our facility."

When defense counsel asked Brucher whether OSHA had ever inspected defendant's facility, plaintiff's counsel objected as to relevancy. After hearing the objection, the trial court asked, "[N]ow, OSHA may be material, could be, but do[ ] OSHA standards cover this particular accident?" When defense counsel replied affirmatively, plaintiff's counsel objected on the grounds that Brucher's answer would be an undisclosed opinion under Supreme Court Rule 213 (177 Ill. 2d R. 213), stating, "There's nothing in any 213 answer that these defendants have ever filed that says anything that she's going to come here and say there's an OSHA standard that particularly relates to any issue in this case." Defense counsel replied as follows:

"Your Honor, at this time—there's no opinion going to be offered. You won't be surprised. I will be surprised if an opinion is offered because we're not going to offer an opinion. What's going on here, your Honor, is the foundation is being laid. [Plaintiff's counsel] in this suit has called into question whether or not [defendant] uses ordinary care to maintain their facilities.

Ms. Brucher is testifying that [defendant] has OSHA people inspect their care for their facilities, the union safety people. Where

she was going with that, not with the unions, but that there are requirements that the union people impose on them to maintain safety in the interest of their employees, that safety is a concern of [defendant]. That there is a safety program, and that there are a number of reasons why there is a safety program. That's all, no opinions. We're not going to say what union it is. We're not going to say that there's an OSHA—opinion on the OSHA standard, simply to show that there is a program in place, something that's been called [in]to question."

Plaintiff's counsel countered that to allow testimony regarding OSHA would be prejudicial to plaintiff, as an OSHA inspection implied a "seal of approval" and it was too late for plaintiff to retain a safety expert of his own. Plaintiff also presented the text of defendant's Rule 213 answer regarding Brucher: "Donna Brucher *** may be called to testify to [defendant's] policy and procedures regarding safety and employee training at the *** facility."

Following lengthy arguments, the trial court ruled that Brucher could not use the term "OSHA," but that defense counsel could ask her whether, in 1995, inspection of the loading dock in question took place by people who were not employees of defendant. Thereafter, defense counsel asked Brucher whether the loading dock was ever inspected by persons other than defendant's employees, and Brucher answered affirmatively.

■ The record does not support defendant's contention that the trial court barred it from offering evidence "which would have identified facts about [defendant's] various safety measures, controls, practices, and procedures" at the battery plant at the time of plaintiff's accident. Instead, the record indicates that the trial court simply ruled that Brucher could not use the term "OSHA" when discussing inspection of the premises.

## V. Closing Arguments

■ Finally, defendant contends that during closing arguments, plaintiff's counsel made unfounded accusations that defendant hired investigators to look into plaintiff's health history and improperly referred to defendant's alleged wealth and size. We note that closing argument that is not supported by facts in evidence is improper (*Bodkin v. 5401 S.P., Inc.*, 329 Ill. App. 3d 620, 635 (2002)), and that reference to the parties' financial condition is impermissible (*LID Associates v. Dolan*, 324 Ill. App. 3d 1047, 1064 (2001)). Upon retrial, improper and impermissible comments in closing argument should be avoided.

## CONCLUSION

For the reasons explained above, we reverse the judgment of the circuit court and remand for a new trial consistent with this opinion.

Reversed and remanded.

GALLAGHER and SMITH, JJ., concur.