IRENE SPAETZEL *et al.*, Plaintiffs-Appellants, v. BRUCE DILLON *et al.*,
Defendants-Appellees.

First District (5th Division)   No. 1—08—0727

Opinion filed August 7, 2009.

Michael B. Gunzburg, of Law Offices of Michael B. Gunzburg, of Chicago,
for appellants.

James K. Horstman, Daniel K. Cray, and Jonathan L. Schwartz, all of Cray Huber Horstman & Vanausdal, LLC, of Chicago, for appellee Frederick Tolin.

William F. Cunningham, Spyridon J. Demakis, and Robert L. Larsen, all of Cunningham, Meyer & Vedrine, P.C., of Chicago, for other appellees.

PRESIDING JUSTICE FITZGERALD SMITH delivered the opinion of the court:

Plaintiffs Irene and David Spaetzel filed a medical malpractice action against Bruce Dillon, Daniel Douglas, Frederick Tolin, and Surgical Consultants of Du Page, Ltd. (defendants), who had performed surgery on Irene to repair a paraesophageal hernia. Plaintiffs claimed that defendants were negligent in failing to timely order an esophogram during postoperative hospitalization and that such delay resulted in a delayed diagnosis, the need for a second surgery, and the removal of certain anatomy of Irene. The jury entered a verdict in favor of defendants and against the plaintiffs, finding that there was no negligence. Plaintiffs filed a posttrial motion, which was denied. Plaintiffs now appeal, alleging that (1) the trial court erred in allowing defense counsel to elicit opinion testimony from their controlled expert witness without first disclosing such opinions, and (2) the trial court erred in striking the affidavits of certain jurors. For the following reasons, we affirm.

## BACKGROUND

Because this appeal focuses on the trial testimony of Dr. Donahue, one of defendants' expert witnesses, we will only recite those facts which are necessary for this appeal. Plaintiffs alleged in their complaint that the defendant physicians were negligent in their care for Irene Spaetzel. Specifically, plaintiffs alleged that defendants failed to recognize the reoccurrence of Irene's paraesophageal hernia despite the fact that it was present in seven chest X-rays and failed to do proper postsurgical follow-up with Irene. Plaintiffs alleged that as a direct and proximate result of such negligence, the paraesophageal hernia reoccurred in Irene and was left undiagnosed for approximately seven months, during which Irene endured pain, suffering, and eating problems which led to a much more complicated second surgery to repair the hernia. Defendants denied all allegations of negligence and responded that they utilized a proper standard of care with respect to Irene's diagnosis and treatment.

Prior to trial, both parties engaged in lengthy discovery. Plaintiffs propounded Rule 213 (210 Ill. 2d R. 213) interrogatories upon defendants regarding their expert witnesses. In response, defendants

disclosed Dr. Donahue as an expert they planned to call as a witness at trial. They specifically disclosed:

"The basis of Dr. Donahue's opinions is his background and his review of the plaintiff's complaint at law, as well as all the depositions taken in this case, as well as all the relevant medical records and diagnostic studies, including but not limited to those of Surgical Consultants of DuPage, Ltd.; Mid America Health Partners; Good Samaritan Hospital; and Northwestern Memorial Hospital. *** Dr. Donahue is expected to testify to the following opinions:

* * *

(9) The air fluid level identified postoperatively was not evidence of a recurrent paraesophageal hernia, nor did it require pursuant to the applicable standard of care any additional treatment or testing including but not limited to a barium or gastrographin esophogram."

During Dr. Donahue's deposition, on July 11, 2006, the following colloquy took place:

"Q. What materials have you reviewed with respect to your involvement in this case?
***

A. And I have reviewed X-rays from several periods of time including the Good Samaritan Hospital admission mainly from Good Samaritan Hospital ranging between November and March ***.

Q. Have you looked at the films themselves?
A. Yes."

On July 12, 2006, Dr. Donahue further testified during his deposition that Irene Spaetzel had a large paraesophageal hernia at the time surgery was performed, and then he stated, "Yes, I reviewed the CAT scan that showed that two-thirds of her stomach was in the chest."

On October 20, 2006, during another deposition session, the following colloquy took place:

"Q. *** [Y]ou also reviewed certain radiological reports that were appended to that latter, including an August 16th, 2006 esophagram, which was two pages, as well as an August 23rd, CT-infused chest exam, correct?
A. Well, yes."

At trial, Dr. Donahue was asked by defense counsel if he had "reviewed the X-ray films from Good Samaritan Hospital, the CT scans, the chest X-rays." Plaintiffs' counsel then objected as to Dr. Donahue relying on such X-rays and scans for his testimony and asked to be heard. The trial court denied the objection, stating:

"Now, I have been shown that there was testimony at the deposition regarding a review. I have been shown an opinion that [Dr.

Donahue] gave with respect to review. I have been shown filings with respect to looking at diagnostic studies. As far as I'm concerned, there is sufficient basis under [Rule] 213 compliance to say that you are on notice as to what [Dr. Donahue] is relying upon. I do not believe under [Rule] 213 every single sentence or word has to be revealed. But I believe under [Rule] 213, if you don't mention anything in the writings, then you have a problem there because you don't have notice. You were on notice based upon my reading of the filings and on notice from the dep[osition] that he has reviewed these scans. He has reviewed these diagnostic studies. You had the opportunity to depose him. The fact that you don't go into it, I don't believe you can use a [Rule] 213 as a sword because you chose not to go into it. You were on notice. The whole thing is on notice."

Dr. Donahue went on to testify that ordering an esophagram was not required "because there was relevant information available on the X-rays that were obtained in terms of the appearance of the various shadows and the air fluid levels and the patient's symptoms and the fact that she was gradually recovering." Dr. Donahue testified that there was insufficient evidence of a recurrent hernia during the postoperative treatment. Looking at a blown up picture of a postoperative X-ray, Dr. Donahue stated, "It appears from that X-ray that the stomach is in the abdomen. It's beneath the diaphragm because the diaphragm is up here, above the liver and beneath the chest. That X-ray to me *** shows to a reasonable degree of certainty that the stomach is down there beneath the left lobe of the liver and next to the spleen where it's supposed to be."

Following the presentation of evidence at trial, the jury found in favor of defendants. Plaintiffs filed a posttrial motion alleging that Dr. Donahue's opinion testimony had not been disclosed prior to trial, in violation of Rule 213, and therefore was prejudicial. They attached two juror affidavits in support of such motion, which stated that the jurors were heavily influenced by Dr. Donahue's testimony regarding the X-rays and scans, and that the outcome may have been different had he not given his opinions. The trial court struck the affidavits as inadmissible and denied plaintiffs' posttrial motion, finding that defendants adequately complied with Rule 213. The trial court stated to plaintiffs' counsel:

"You just sat there *** at the discovery deposition. The Court views you as the architect of your own demise. Here is why, you hired an expert and all you sent the expert was the reports. You had the studies. You had the X-rays and in their filing, Dr. Donahue says at the discovery dep that he reviewed the diagnostic—made reference to the X-rays. So you knew he had those things. You

didn't bother sending your expert those and at the discovery dep you asked [Dr. Donahue], 'Did you look at the X-rays?' He said, 'Yes.' And you never questioned him about it.

\*\*\*

I don't believe a party can just hide in the bushes and then get at trial and say to a judge \*\*\* we were never told about this. Yet you were given an opportunity to ask him questions about it, and you never asked him any questions about what his findings were."

Plaintiffs now appeal.

## ANALYSIS

On appeal, plaintiffs claim that they were deprived a fair trial because the trial court abused its discretion in allowing Dr. Donahue to render opinion testimony as to his interpretation of radiographic films, in violation of Supreme Court Rule 213. Plaintiffs also claim that the trial court erred when it struck the two juror affidavits that plaintiffs had submitted in support of their posttrial motion.

### I. Juror Affidavits

We first address plaintiffs' argument that the trial court erred in striking the two juror affidavits the plaintiffs submitted in support of their posttrial motion. Plaintiffs' posttrial motion alleged the same argument that is presented in the next part of this opinion: that Dr. Donahue's trial testimony was improper, that defendants violated Supreme Court Rule 213, and that plaintiffs were prejudiced as a result. The juror affidavits, signed by Lee Williams and Patricia Maryniak, alleged that Donahue's testimony regarding the CT scans were extremely influential in their decision-making processes and that the outcome of the case likely would have been different had Dr. Donahue not given such testimony. The trial court struck such affidavits on the basis that juror affidavits are inadmissible in an attempt to prove the motive, method, or process by which a jury reached its verdict. On appeal, plaintiffs maintain that the affidavits were not being used to impeach the verdict but rather to show prejudice, which is admissible. We disagree.

There are two broad categories of situations in which affidavits of jurors are offered in an attempt to impeach a jury's verdict. *People v. Holmes*, 69 Ill. 2d 507, 511 (1978). "In the first category are those instances in which it is attempted to prove by a juror's testimony or affidavit the motive, method or process by which the jury reached its verdict." *Holmes*, 69 Ill. 2d at 511. These, almost without exception, are inadmissible. *Holmes*, 69 Ill. 2d at 511; see, *e.g.*, *Wolfe v. Menard, Inc.*, 364 Ill. App. 3d 338 (2006) (affidavit that stated jury agreed to find plaintiff 70% to 75% at fault before the judge entered the jury

room and that judge's instruction influenced the jury to enter a verdict in plaintiff's favor, went into the jurors' deliberations and mental processes and was therefore inadmissible); *People v. Hobley*, 182 Ill. 2d 404, 463 (1998) (affidavit of alleged intimidation by jury foreman, in which jurors claimed foreman told them he was a police officer, showed them his gun, and persuaded them to find defendant guilty, was not an improper extraneous influence and rather went to motive, method or process, so was therefore inadmissible).

"The second category involves those situations in which the testimony or affidavit of a juror is offered as proof of conditions or events brought to the attention of the jury without any attempt to show its effect on the jurors' deliberations or mental processes." *Holmes*, 69 Ill. 2d at 512. Our supreme court has concluded that a juror should be permitted to testify as to whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. *Holmes*, 69 Ill. 2d at 516; see, *e.g.*, *Hobley*, 182 Ill. 2d at 459 (intimidation of jurors by nonjurors while jurors were dining was a prejudicial outside influence on the jury, and juror testimony about it could be used to attack the verdict.)

■ Here, we find that the two juror affidavits, stating that Dr. Donahue's testimony regarding the CT scans was extremely influential in their decision-making processes, go to their deliberations and mental processes, which is inadmissible. Each affidavit describes what took place as the jurors deliberated with no one else present. The affidavit by Lee Williams, submitted in support of plaintiffs' posttrial motion, stated in pertinent part:

"7. As foreman of the jury, I know that Dr. Donohue's comparison and interpretation of the above-referenced CT films played a very significant role in the jury reaching a verdict in favor of defendants.

8. Had the jury not seen and heard Dr. Donahue's comparison and interpretation of the CT films, I believe the verdict in this case may have been different."

Similarly, Patricia Maryniak's affidavit stated in pertinent part:

"7. As one of the jurors who actively participated in the deliberations, I know that Dr. Donohue's comparison and interpretation of the above-referenced CT films played a very significant role in the jury reaching a verdict in favor of the defendants.

8. Had the jury not seen and heard Dr. Donahue's comparison and interpretation of the CT films, I believe the verdict in this case may have been different."

There is no showing of extraneous influences that would support a collateral attack on the verdict. Rather, the affidavits describe what

influenced the jury's mental processes during deliberations, which is precisely the type of affidavit that is inadmissible. Accordingly, we find that the trial court properly struck such affidavits at the posttrial hearing.

## II. Testimony of Dr. Donahue at Trial

■ We next address plaintiffs' argument that the trial court abused its discretion in allowing Dr. Donahue, an expert witness for defendants, to render opinion testimony as to his interpretation of radiographic films, in violation of Supreme Court Rule 213. Illinois Supreme Court Rule 213 states in pertinent part:

"The information disclosed in answer to a Rule 213(f) interrogatory, or at deposition, limits the testimony that can be given by a witness on direct examination. Information expressed in a deposition need not be later specifically identified in a Rule 213(f) answer ***." 210 Ill. 2d R. 213.

Plaintiffs contend that Dr. Donahue's trial testimony had not been disclosed in answers to interrogatories or in depositions and, therefore, the plaintiffs were prejudiced by such surprise. Defendants respond that their disclosures with respect to the testimony of Dr. Donahue were appropriate and in compliance with Supreme Court Rule 213 and that his trial testimony was thus proper.

The decision of whether to admit or exclude evidence, including whether to allow an expert to present certain opinions, "rests solely within the discretion of the trial court and will not be disturbed absent an abuse of discretion." *Foley v. Fletcher*, 361 Ill. App. 3d 39, 46 (2005). An abuse of discretion occurs only if " 'no reasonable person would take the view adopted by the trial court.' " *Foley*, 361 Ill. App. 3d at 46, quoting *Dawdy v. Union Pacific R.R. Co.*, 207 Ill. 2d 167, 177, 797 N.E.2d 687 (2003).

The purpose of discovery rules, governing the "timely disclosure of expert witnesses, their opinions[,] and the bases for those opinions[,] is to avoid surprise and to discourage strategic gamesmanship." *Thomas v. Johnson Controls, Inc.*, 344 Ill. App. 3d 1026, 1032 (2003). Supreme Court Rule 213 disclosures are mandatory and strict compliance is required. *Sullivan v. Edward Hospital*, 209 Ill. 2d 100, 109 (2004). Rule 213(f)(3) requires parties to furnish, among other things, the subject matter, conclusions, and opinions of controlled expert witnesses who will testify at trial. Rule 213(g) limits expert opinions at trial to "[t]he information disclosed in answer to a Rule 213(f) interrogatory, or at deposition." 210 Ill. 2d R. 213. "A witness may elaborate on a disclosed opinion as long as the testimony states logical corollaries to the opinion rather than new reasons for it." *Foley*, 361 Ill. App. 3d at 47. "The testimony at trial must be encompassed by the original opinion." *Foley*, 361 Ill. App. 3d at 47.

In the case at bar, defendants, in their Rule 213 disclosures, stated in pertinent part:

"The basis of Dr. Donahue's opinions is his background and his review of the plaintiff's complaint at law, as well as all the depositions taken in this case, as well as all the relevant medical records and diagnostic studies, including but not limited to those of Surgical Consultants of DuPage, Ltd.; Mid America Health Partners; Good Samaritan Hospital; and Northwestern Memorial Hospital. *** Dr. Donahue is expected to testify to the following opinions:

* * *

(9) The air fluid level identified postoperatively was not evidence of a recurrent paraesophageal hernia, nor did it require pursuant to the applicable standard of care any additional treatment or testing including but not limited to a barium or gastrographin esophogram."

During Dr. Donahue's deposition, he stated, "And I have reviewed X-rays from several periods of time including the Good Samaritan Hospital admission namely from Good Samaritan Hospital ranging between November and March of 1999."

Plaintiffs argue that the above Rule 213 disclosures were not sufficient to have put them on notice as to what Dr. Donahue was going to testify to at trial, namely, that defense counsel was going to display to the jury blow-ups of the October 25, 1998, and March 24, 1999, CT scans and then elicit opinions regarding Dr. Donahue's interpretations of those scans, as well as opinions that the air-fluid level depicted in the October 25, 1998, CT scan was not suggestive of a recurrent paraesophageal hernia. We disagree.

Here, the record shows that during pretrial discovery, the defendants disclosed the general opinions that Dr. Donahue would testify to. More specifically, in defendants' answers to interrogatories, they stated that Dr. Donahue would testify that the "air fluid identified postoperatively was not evidence of a recurrent paraesophageal hernia." Dr. Donahue also testified in his depositions and in his answers to interrogatories that he had reviewed the CT scans as well as diagnostic studies. We find that the particular opinions elicited from Dr. Donahue at trial, regarding blown-up pictures of the CT scans, were permissible as an elaboration on, or a logical corollary to, the originally revealed opinion. See *Brax v. Kennedy*, 363 Ill. App. 3d 343, 355 (2005); see also *Skubak v. Lutheran General Health Care Systems*, 339 Ill. App. 3d 30, 39 (2003) (witnesses are allowed to elaborate or give logical corollaries to Rule 213 disclosures). Thus, we conclude that the trial court did not abuse its discretion when it allowed the testimony at issue.

Moreover, we note that it is "axiomatic that error in the exclusion or admission of evidence does not require reversal unless one party has been prejudiced or the result of the trial has been materially affected." *Stricklin v. Chapman*, 197 Ill. App. 3d 385, 388 (1990). Plaintiffs' only support for their claim of prejudice was the two juror affidavits. However, as discussed above, such affidavits are inadmissible as evidence. Accordingly, even if we were to have found that the trial court erred in allowing Dr. Donahue to testify as to his opinions regarding the X-rays and CT scans, such error would not have required reversal as plaintiffs were unable to show prejudice.

### III. CONCLUSION

For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

Affirmed.

O'MARA FROSSARD and TOOMIN, JJ., concur.